## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT LEE PLUMLEE, JR., B89377 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 23-cv-1880-RJD |
| | ) | |
| LATOYA HUGHES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 47). For the reasons set forth below, Defendants' motion is **DENIED**.

## Factual Background

Plaintiff Robert Lee Plumlee, Jr., an individual with an alleged serious mental health diagnosis and traumatic brain injury, is an inmate at Menard Correctional Center. (*See* Docs. 4 at 2; 54 at 1). Plaintiff proceeds on two Eighth Amendment deliberate indifference claims against Defendants, Latoya Hughes and Warden Anthony Wills, for their failure to protect him from the risk of serious harm posed by "flag" showers in Menard's North II Cell House in April 2022 and May 2023, where Plaintiff was housed at the time. (Doc. 22, 2-3). Following a preliminary review of the First Amended Complaint, filed on June 22, 2023, Plaintiff was allowed to proceed on the following claims:

Count 1: Eighth Amendment deliberate indifference claim against Defendants for failing to protect Plaintiff from the risk of serious injury posed by flag showers in Menard's North II Cell House and resulted in Plaintiff's self-inflicted harm with a homemade shank on or around April 4,

2022, and his return to the same area of the prison on crisis watch after April 5, 2022.

Count 2: Eighth Amendment deliberate indifference claim against Defendants for failing to protect Plaintiff from the risk of serious injury posed by flag showers in Menard's North II Cell House when he was again transferred there for crisis watch over his protests about his past injuries from homemade shanks on or around May 16, 2023. (Doc. 22, 2-4).

*First Amended Complaint*

Plaintiff makes the following allegations in his First Amended Complaint. (Docs. 22 ). Plaintiff has a history of suicide attempts using shanks crafted from the prison's flag shower heads and nozzles. (*Id.* at 1). Flag showers are located in Galleries 1, 3, 5, and 7 of Menard's North II Cell House, an area of the prison that also houses suicidal inmates while they are on crisis watch. (*Id.*). Plaintiff has used these flag showers to create shanks and has also been threatened with shanks created by other inmates. (*Id.*).

On April 4, 2022, Plaintiff was found in possession of a shank while on crisis watch at Menard. (Doc. 22, 1-2). Plaintiff used the weapon to severely mutilate his body before Sergeant Royster and Menard's Emergency Response Team (ERT) intervened. (*Id.* at 2). Plaintiff was transported to a local hospital, where he underwent an emergency colonoscopy extraction on April 5, 2022. He then returned to the same location at Menard, where he faced a serious risk of harm from these showers and shanks. IDOC Director Latoya Hughes oversees ERT protocols in the IDOC, and Warden Anthony Wills is responsible for implementing these protocols at Menard. Both were aware of the incident and allegedly admitted responsibility for creating the unsafe conditions that led to Plaintiff's self-inflicted harm. (*Id.*).

On May 16, 2023, Plaintiff was again moved into crisis watch in Menard's North II Cell House. (Doc. 22, 2). He was placed near one of the galleries where he previously received a shank. (*Id.*). Plaintiff notified staff that his placement near the flag showers posed a risk of serious harm to his health and safety because he previously acquired a shank made from the flag showers

there and could do so again.  (*Id.*).  Warden Wills classified Plaintiff's grievance as a non-emergency and took no action to move him to a different location for crisis watch.  (*Id.*).  When IDOC Director Hughes learned of Plaintiff's grievance, she wrote an email reprimanding staff at Menard but took no other steps to protect him from harm.  (*Id.*).

*Defendants' Motion for Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 47)*

Defendants filed their Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 47) along with a Memorandum in Support of the same (Doc. 48). Defendants attached to the Memorandum Exhibit A, containing Plaintiff's relevant grievance history with the ARB.  (Doc. 48-1).  Thereafter, per this Court's order, Defendants supplemented the record twice to include two missing grievances as well as Plaintiff's grievances that were not in the ARB's record and Plaintiff's Grievance Log and Cumulative Counseling History.  (Docs. 68-1, 68-2, 68-3,  78-1, 78-2; and 79-1 ).

Plaintiff filed a response in which he argued that the IDOC administration had admitted responsibility for the complained-of conduct through their response to Grievance #113-5-22, which he argues released Plaintiff of his obligation to exhaust administrative remedies.  (Doc. 53 at 1).  Plaintiff further filed a document titled "Important Notice," asserting further grounds in opposition to Defendants' motion for summary judgment and specifically pointing to unnumbered grievance dated May 13, 2023, and Grievance #113-5-22.  (Doc. 54 ).  He further stated that he sought protection for this issue on November 28, 2022, naming the IDOC Director, but his request was denied.  (*Id.* at 2).  Defendants asked the Court to strike Plaintiff's important notice on the ground that it was filed beyond the 30-day deadline for a response to their motion for summary judgment and because Plaintiff had failed to respond with citation to the record to each statement of material fact set forth on Defendants' motion.  (Doc. 58-1 at 2).

On August 8, 2024, a hearing on Defendants' motion for summary judgment on the issue

of exhaustion was held.  Plaintiff set forth a list of relevant grievances that allegedly were fully exhausted.  Plaintiff further pointed to Grievances #220-3-22 and #286-3-22, which Defendants had failed to produce in support of their motion.  Kelly Pierce, the facility's Grievance Officer at the times relevant to the complaint, testified on behalf of Defendant regarding Menard's grievance process at the time as well as Plaintiff's relevant grievance history.  Defendants were ordered to file within five (5) days of the hearing the Grievance Log and Cumulative Counseling Summary (CHAMPS) to which Kelly Pierce testified and to also produce copies of Grievances #220-3-22 and #286-3-22.  On August 8, 2024, Defendants complied with the Court's order and supplemented the record.  (Docs. 78 & 79).

## Legal Standards

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248).  In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

***Exhaustion Requirements***

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court.  "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies."  *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).  The Seventh Circuit requires strict compliance with a prison's grievance procedures under the PLRA.  *Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006).  Thus, filing "untimely or otherwise procedurally defective administrative grievance or appeal" will not satisfy the exhaustion requirement.  *Id.*  If a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted."  *Dole*, 438 F.3d at 809.  Further, "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."  *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999).  "[A]ll dismissals under § 1997e(a) should be without prejudice."  *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

At the same time, inmates only have to exhaust those administrative remedies that are available to them.  *Dole*, 438 F.3d at 809.  Prison officials may not utilize the exhaustion process so as to unfairly prejudice inmates, and an administrative remedy will be deemed "'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."  *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir.2002); *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir.2004)).  The Supreme Court has set forth several examples of ways in which a grievance system might be unavailable, including if the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use."  *Ross v. Blake*, 578 U.S. 632, 639–40, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016).  "An unreasonable delay in responding to a properly filed grievance constitutes a

scenario in which administrative remedies are unavailable for exhaustion purposes." *Vargas v. Wexford Health Sources, Inc.*, No. 18-CV-06068, 2024 WL 1376369, at *6 (N.D. Ill. Mar. 31, 2024) (citation omitted).   It is the defendant's burden to show "beyond dispute" that the administrative remedies were available." *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

Further, whether the administrative "remedy is available to exhaust is a fact-specific inquiry" that focuses on whether the grievance procedure "could have been understood by [the] particular prisoner" based on that prisoner's "individual capabilities." *Smallwood v. Williams*, 59 F.4th 306, 314 (7th Cir. 2023) (citation omitted).   The prisoner's physical and mental limitations should also be taken into consideration when analyzing the availability of an administrative remedy.   *Id.* (collecting case law finding the grievance proceeding unavailable based on an inmate's inability to write on his own, incapacitation by a stroke, or impairment by a serious mental health issue).

Remedies may be unavailable to prisoners for other fact-specific reasons unrelated to physical health or mental capacity, in particular where the prison acts in a manner that causes the grievance procedure to be unavailable—for example, where the process exists in theory but operates as a dead end, or where prison administrators thwart the use of the process through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644, 136 S.Ct. 1850.   An inmate's ignorance or misunderstanding of the administrative proceedings will not excuse his failure to exhaust the available remedies where a prison has adequately informed the inmate regarding the procedure.   *Id.*   On the other hand, when an inmate's lack of knowledge of the procedure is outside his control because "he has not been informed of the process, whether due to misconduct by prison employees, or because his personal circumstances preclude him from being able to make use of the process," the administrative remedy will not be available to that inmate. *Id.*

An inmate in the custody of the Illinois Department of Corrections must first submit a

written grievance within 60 days after the discovery of the incident, occurrence, or problem, to his or her institutional counselor unless certain discrete issues are being grieved.  20 ILL. ADMIN. CODE § 504.810(a).  If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer ("CAO") — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances."  *Id*. §504.830(e).  The CAO then advises the inmate of a decision on the grievance.  *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board ("ARB") for a final decision.  *Id.* §_504.850(a); *see also Dole*, 438 F.3d at 806–07.  The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal.  20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer.  *Id.* § 504.840.  If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender.  *Id.*  Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility.  *Id.* at § 504.870.

Grievances must contain factual details regarding each aspect of the inmate's complaint, including the name of each person who is the subject of or who is otherwise involved in the complaint.  20 ILL. ADMIN. CODE § 504.810(c).  This condition is tempered, however, in that an offender who does not know the name of each person who is involved in the complaint may simply describe the individual with as much detail as possible.  *Id.* The Seventh Circuit has interpreted

this provision as requiring the inmate plaintiff to identify names only to the extent practicable to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir.2011); *Glick v. Walker*, 385 F. App'x 579, 582 (7th Cir. 2010).  Thus, not naming the defendants in a grievance is "'a mere technical defect' where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond." *Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (quoting *Maddox*, 655 F.3d at 722).  So long as the "prison officials have been afforded an opportunity to address an inmate's claims internally prior to federal litigation, the purpose of exhaustion has been met, and the prisoner has properly exhausted his available remedies." *Bandala-Martinez v. Bebout*, 188 F. Supp. 3d 836, 842–43 (S.D. Ill. 2016) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006)).

<u>**Analysis**</u>

Plaintiff's Grievance Log shows that Plaintiff filed over 30 grievances between March 2022 and May 2023.  The Court finds that there are certain grievances based on which Plaintiff can be deemed to have satisfied his duty to exhaust administrative remedies with respect to the claims asserted in this action.  Therefore, the Court will limit its analysis on those grievances.

**1. Emergency Grievance #220-3-22, dated March 19, 2022 & Emergency Grievance #286-3-22, dated March 31, 2022.**

Plaintiff filed Emergency Grievance #220-3-22, dated March 19, 2022, in which he grieved a self-inflicted injury on that same date while on crisis watch.  (Doc. 79-1 at 3).  Plaintiff specifically stated that he "had a metal object placed in his rectum during crisis watch where he has no property." (*Id.*).  He stated that the metal object was approximately 3-4 inches long, had a screw at its end, and he found it while being placed on crisis watch.  (*Id.*).  He further stated that he was deprived of proper medical treatment and was placed back into his cell with the object still in his rectum.  (*Id.*).  Plaintiff stated that "Officer Berry witnessed him place during trays." (*Id.*).

He requested emergency medical treatment because he was unable to pass food properly and because his rectum was bleeding.  (*Id.*).

On March 24, 2022, the CAO deemed the grievance an emergency and returned it to the Grievance Office for further handling.  (Doc. 79-1 at 1-2).  On March 28, 2022, the grievance was forwarded to the Mental Health and the Health Care Unit for review.  (*Id.*).  On April 5, 2022, Angela Crain, the Menard Health Care Unit Administrator, reviewed Plaintiff's medical records and advised that Plaintiff was seen on March 19, 2022, by nurse A. Williams due to Plaintiff having inserted a foreign body into his rectum while in the shower.  (*Id.*).  Williams communicated with Dr. Meyers, who advised that Plaintiff's rectal bleeding should be monitored.  (*Id.*).  Crain's response detailed the treatment Plaintiff received following the incident.  The record further contains a memorandum prepared by Shane Reister, Psy.D., Southern Regional Psychologist Administrator at IDOC, in response to this grievance, which details Plaintiff's mental health history and suggests that Plaintiff was placed on a continuous crisis watch following the March 19, 2022, incident.  (*Id.* at 5).  The Grievance Officer recommended that the Grievance be deemed moot.  (*Id.* at 1-2).

While the CAO's review of Emergency Grievance #220-3-22, dated March 19, 2022, was pending, Plaintiff filed Emergency Grievance #286-3-22, dated March 31, 2022, in which he again grieved medical and mental health treatment.  (Doc. 79-1 at 7).  Plaintiff again stated that on March 19, 2022, and while on crisis watch for over one and a half months, he located a metal cylinder approximately 3-4 inches long, with screws at its end, which could be used to inflict self-harm or injure others.  (*Id.*).  Plaintiff stated that he placed the cylinder in his rectum at approximately 4:00 p.m. and that "C/O Berry" witnessed the incident.  (*Id.*).  Plaintiff was placed in health care but was returned to his cell almost immediately with minimum care by the medical staff.  (*Id.* at 8).  For the next three days, Plaintiff was not seen by a doctor even though he was experiencing rectal bleeding, gastrointestinal pain, severe discomfort, and constipation.  (*Id.*).  On March 21, 2022, he

was transferred to a hospital in Carbondale, Illinois, for X-rays and was scheduled for emergency surgery for the removal of the object from his rectum, which was performed later that day. (*Id.*). Following the surgery, Plaintiff was released and transferred back to Menard, where he was placed again on crisis watch. (*Id.*). Plaintiff requested emergency medical treatment due to rectal bleeding. (*Id.*).

On April 1, 2022, the CAO deemed Emergency Grievance #286-3-22, dated March 31, 2022, an emergency and forwarded it to the Grievance Officer for further review. (Doc. 79-1 at 6). On April 4, 2022, the Grievance Officer recommended that the grievance be deemed moot because it was a duplicate of the issue addressed in Grievance #220-3-22. (*Id.* at 6). The Grievance Log suggests that the Grievance Officer returned Grievance #286-3-22 to Plaintiff on April 4, 2022, the day Plaintiff again attempted to commit suicide using a "shank" allegedly obtained from the "flag showers." (Doc. 78-1 at 1-4).

On April 11, 2022, the CAO reviewed Emergency Grievance #220-3-22 along with Emergency Grievance #286-3-22 and concurred with the Grievance Officer's recommendation that both grievances were moot: the former because Plaintiff had already received the medical and mental health treatment requested and the latter because it was duplicate of the former. (Doc. 79-1 at 1, 6). According to the Grievance Log and the Cumulative Counseling Summary, the CAO's responses to Emergency Grievances #220-3-22 and #286-3-22 were sent to Plaintiff on April 12, 2024, via institutional mail. (Doc. 78-1 at 1, 6; Doc. 78-2 at 11). However, Plaintiff testified that he never received the Grievance Officer's and CAO's responses to his grievances, and Defendants did not include copies of the responses either with their initial brief or with their three subsequent supplements. (*See* Docs. 48, 68, 78, 79). Plaintiff further testified that he sent both grievances directly to the ARB. However, neither grievance was included in the ARB's record and Grievance History. (Doc. 68-1 at 1). Further, the respective Grievance Officer's Reports do

not include the Plaintiff's signatures indicating his intent to appeal them with the ARB. (Doc. 79-1 at 1-2, 6).

The record shows, however, that Plaintiff filed several grievances complaining about not receiving the Grievance Officer's responses to Emergency Grievances #220-3-22 and #286-3-22. First, Plaintiff filed Grievance #202-4-22, dated April 18, 2022, complaining, *inter alia*, for not having received a response to Grievances #202-3-22 and #286-3-22. (Doc. 68-2 at 42-43). The Grievance Officer responded on April 21, 2022, noting that Grievances #202-3-22 and #286-3-22 were responded and sent back to Plaintiff on April 12, 2022, and that the issues of Grievance #202-4-22, dated April 18, 2022, were duplicate of the issues raised in Grievances #202-3-22 and #286-3-22. (*Id.* at 41). The CAO concurred on April 21, 2022. (*Id.*). Plaintiff did not appeal the CAO's decision. (*Id.*).

Thereafter, Plaintiff filed Emergency Grievance #304-4-22, dated April 25, 2022, regarding his recent suicide attempts and the lack of medical and mental health treatment. (Doc. 68-3 at 71). Plaintiff further requested that Grievances #220-3-22, #286-3-21, and #18-4-22 be acknowledged and be deemed an emergency. (*Id.*). The Chief Administrative Officer determined that the grievance was not an emergency and directed Plaintiff to submit his grievance in accordance with standard grievance procedure. (*Id.*). It appears that Plaintiff sent Grievance #304-4-22, dated April 25, 2022, directly to the ARB, which received it on May 25, 2022. (*Id.* at 68). The ARB returned the grievance on May 27, 2022, because it did not include Plaintiff' original grievance form, including the counselor's response, and did not include a copy of the Grievance Officer's and CAO's responses. (*Id.*). The ARB noted, however, that "due to the nature" of Plaintiff' claims, an email was sent on Plaintiff's behalf to the appropriate staff. (*Id.*). The ARB further advised Plaintiff that it was inappropriate to file a new grievance on an already filed one and instructed Plaintiff: "Once the other is completed, submit to this office within timeframes." (*Id.*). The record contains electronic correspondence between the ARB and Menard administrative

staff regarding Plaintiff's medical treatment for his rectal bleeding and mental health treatment. (*Id.* at 69-70). The ARB did not inquire on the status of Plaintiff's pending grievances. (*Id.*).

Subsequently, on June 14, 2022, Plaintiff filed Grievances #207-6-22, complaining about not having received responses to Emergency Grievances #220-3-22, dated March 19, 2022, #286-3-22, dated March 31, 2022, and Grievance #18-4-22, dated April 1, 2022. (Doc. 68-3 at 67). Plaintiff requested responses to those grievances or, in the alternative, that any "response that was given be sent" to Plaintiff through "institutional mail." (*Id.*). The Counselor deemed the grievance moot, noting that Plaintiff was advised on June 6, 2022, regarding the whereabouts of the grievances. (*Id.*). It appears that Plaintiff did not appeal Grievance #207-6-22, dated June 14, 2022, with the Grievance Officer but instead sent it directly to the ARB. (Doc. 78-2 at 1; 78-1 at 1-4). The ARB found that Plaintiff inappropriately had filed a new grievance on an already filed grievance and instructed Plaintiff to submit Emergency Grievances #220-3-22, dated March 19, 2022, #286-3-22, dated March 31, 2022, and Grievance #18-4-22, dated April 1, 2022, to the ARB, "within timeframe" once they were "finalized." (*Id.* at 66).

The Court first notes that the record does not support a finding that Plaintiff properly followed the grievance process as to Emergency Grievances #220-3-22, dated March 19, 2022, and #286-3-22, dated March 31, 2022. However, there remains a question as to whether administrative remedies were made available to Plaintiff in light of his testimony that he never received copies of the Grievance Officer and the CAO's responses to those grievances. Regardless of whether the responses were originally delivered to Plaintiff via institutional mail as reflected on the Grievance Log and the Cumulative Counseling Summary, the record makes clear that Plaintiff made numerous reasonable attempts to obtain copies of those responses, but his requests were repeatedly denied. Plaintiff was advised once of the "whereabouts" of those grievances, but the record shows that he was never provided with additional copies despite his repeated requests. Plaintiff, an individual with chronic serious mental health issues, who at the relevant time was on

a crisis watch and had just made two suicide attempts within a two-week period, could have simply lost the copies originally provided to him.  The ARB made clear to Plaintiff that it would not review those grievances unless they were accompanied by the responses of the Grievances Officer and the CAO.  It also made clear that the Plaintiff was not allowed to file new grievances complaining about the previous grievances.  It thus becomes apparent that once Plaintiff was unable to locate the copies of the Grievance Officer and CAO's responses, he was left with no option to cure that defect and exhaust his administrative remedies.  Further, there is nothing in the Illinois Administrative Code suggesting that Plaintiff may not obtain copies of responses that were already provided to him or that does not allow an inmate to cure any defects to his grievance process within the appropriate timeline.  In light of the institution's denial of Plaintiff's numerous attempts to obtain copies of the Grievance Officer and CAO's responses to Emergency Grievances #220-3-22, dated March 19, 2022, and #286-3-22, the Court finds that the administrative remedies were unavailable to Plaintiff with respect to those grievances.

**2.  Grievance #18-4-22, dated on April 1, 2022.**

In Grievance #18-4-22**,** dated April 1, 2022, Plaintiff complained about the conditions of confinement of inmates with serious mental health needs who were under crisis watch at Menard. (Doc. 68-3 at 32-33).  Plaintiff restated his long history of suicide attempts while on crisis watch, including an incident between the weeks of December 1 and December 15 of 2021, when Plaintiff cut major veins in his testicles, and an incident on December 17, 2021, where he hung himself. (*Id.*).  Plaintiff then went on to detail his last attempted suicide on March 19, 2022, while again on crisis watch, when he "located a metal object 3"- 4" long and attempted to cut his digestive tract." (*Id.* at 33).  The grievance further referred to Plaintiff's prior Grievances #220-3-22 and #286-3-22 with respect to Plaintiff's most recent suicide attempt.  (*Id.*).  Plaintiff did not state how he obtained the metal object.  (*Id.*).  However, he raised serious concerns about the conditions of confinement of those on crisis watch and the systemically inadequate prison healthcare for those

with serious mental health needs.  (*Id.*).  Plaintiff sought compensation for the emotional and physical pain he suffered and for the risk of imminent danger while being in Menard's care.  He further sought changes in the IDOC to protect inmates with serious mental health issues from the risk of imminent danger.  (*Id.* at 32).

For over eleven months, Plaintiff did not receive a response from the Counselor.  (*Id.* at 32).  While the Counselor's response was pending, Plaintiff filed at least three grievances seeking a status update: Emergency Grievance #304-4-22, dated April 25, 2022; Grievance #207-6-22, dated June 14, 2022; and Grievance #5-7-22, dated June 27, 2022.

As set forth above, Emergency Grievance #304-4-22, seeking, *inter alia*, acknowledgment and response to Emergency Grievances #220-3-22, #286-3-21, and Grievance #18-4-22, was denied by the ARB because Plaintiff had inappropriately filed a new grievance on already filed ones and instructed him to resubmit the pending grievances to their office within timeframes once they were "completed."  (Doc. 68-3 at 68-72).

On June 14, 2022, Plaintiff filed Grievance #207-6-22, asking, *inter alia*, again for an update on pending Grievance #18-4-22, dated April 1, 2022.  (Doc. 68-3 at 67).  On June 23, 2022, the Grievance Officer deemed the grievance moot, noting that Plaintiff was advised on June 6, 2022, regarding the whereabouts of the grievance.  (*Id.*).  While the Counselor did not restate in his response the status of the pending grievance, the Cumulative Counseling Summary suggests that the Counselor advised Plaintiff on June 6, 2022, that the response to Grievance #18-4-22**,** dated April 1, 2022, was still pending awaiting the respective response from the Mental Health Unit.  (Doc. 78-2 at 10).

On June 27, 2022, Plaintiff filed Grievance #5-7-22, dated June 27, 2022, complaining again about rectal bleeding and for the lack of response to Grievance #18-4-22.  (Doc. 68-3 at 35-39).  While response to Grievance #5-7-22 was pending, Plaintiff received the Counselor's response to  Grievance #207-6-22, dated June 14, 2022, and on June 30, 2022, he sent it directly

to the ARB, which on July 8, 2022, found that Plaintiff had inappropriately filed a new grievance

on an already filed grievance and instructed Plaintiff to submit Grievance #18-4-22 to the ARB,

within timeframe, once it was finalized. (*Id.* at 66).

On March 21, 2023, nearly a year after Grievance #18-4-22**,** dated April 1, 2022, was filed,

Plaintiff received the Counselor's response.  (Doc. 68-3 at 32).  The response consisted of a

reference to a Memorandum of the Mental Health Services Director at Menard, Kimberly Weitl,

dated March 20, 2023.  (*Id.*).  The memorandum stated that the requested relief (compensation for

emotional and physical pain) was beyond the scope of the mental health department.  (*Id.* at 31).

There is no indication that Plaintiff submitted the grievance to the Grievance Officer for further

review at that time.

It appears, however, that on April 17, 2023, the Grievance Office received Grievance #226-

4-23, dated April 12, 2023, regarding the delayed response in Grievance #18-4-22.  (Doc. 78-1 at

5-8; Doc. 78-2 at 4).[1]  On April 18, 2023, Grievance #226-4-23 was forwarded to the Counselor,

who then referred it to Mental Health for response.  (*Id.*).  On May 5, 2023, the Counselor appears

to have provided the following response:

> "Grievance# 226-4-23MEN: Per Memo dated 5/4/23: In your grievance you indicate that
> your previous grievance had not been answered in a timely manner.  We will do our best
> to answer your grievances more quickly.  It also appears that you are requesting that you
> be evaluated more frequently by mental health staff.  I will see that you are scheduled with
> a MHP as soon as possible and that you continue being scheduled on a regular basis. You
> are reminded that individual in custody request forms can be provided, and/or a crisis team
> member can be called for immediate need.

Doc. 78-2 at 3).  The Grievance Log further suggests that the response was returned to Plaintiff on

May 9, 2023.  (Doc. 78-1 at 5-8).

Meanwhile, a few days earlier, on April 23, 2023, Plaintiff had sent a letter directly to the

ARB regarding the Counselor's delayed response to Grievance #18-4-22.  (Doc. 68-3 at 36-37).

---

[1] Defendants have failed to provide a copy of this grievances, but its filing is recorded on Plaintiff's Grievance
History and Cumulative Counseling Summary.

Importantly, Plaintiff advised the ARB that the Counselor's response was sent to the Law Library for copies and was never returned to Plaintiff.  (*Id.*).  Thereafter, on May 11, 2023, Plaintiff sent Grievance #18-4-22 directly to the ARB, along with a letter complaining about the significant delay in the Counselor's response.  (*Id.* at 29-30).  Plaintiff further referenced Grievance #113-5-22, in which Plaintiff complained about another suicide attempt on April 5, 2022, and pointed to the similarity of the objects used on March 19, 2022, and April 5, 2022, for his suicide attempts.  (*Id.* at 30).  The ARB returned Plaintiff's Grievance without review on May 23, 2023, instructing Plaintiff to resubmit the grievance, *if timely*, along with copies of the Grievance Officer's and CAO's responses.  (*Id.* at 29) (emphasis in the original).

According to the Cumulative Counseling Summary, on June 7, 2023, after Plaintiff had already initiated this action, Grievance #18-4-22, dated April 1, 2022, was received by the Grievance Officer for a second-level review.[2]  (Doc. 78-2 at 1).  Any responses by the Grievance Officer or the CAO to Grievance #18-4-22, dated April 1, 2022, were not produced by the Defendants in support of their Motion for Summary Judgment.  The Cumulative Counseling Summary does not indicate what the Grievance Officer's response was.  (*Id.*).  However, the Grievance Log suggests that the Grievance Officer reviewed the grievance on that same day, with the CAO reviewing it on July 19, 2023, and its final disposition being "OTF," which the Court assumes to be outside the timeframe.  (Doc. 78-1 at 1-4).  There is no indication that Plaintiff resubmitted Grievance #18-4-22, dated April 1, 2022, to the ARB for review.

However, Plaintiff's Grievance History suggests that Plaintiff sent Grievance #226-4-23, dated April 12, 2023, directly to the ARB, complaining again about the delayed response to Grievance #18-4-22.  (Doc. 68-1 at 1).  Defendants did not provide a copy of Grievance #226-4-23, dated April 12, 2023, and the ARB's response thereto, but the Grievance History indicates that

---

[2] Plaintiff filed his Complaint on June 1, 2023, and his First Amended Complaint on June 22, 2023.

the ARB responded on August 13, 2023, after Plaintiff had initiated this action, advising Plaintiff once more that it was inappropriate to file a grievance regarding pending grievances, and instructing him to submit Grievance #18-4-22, dated April 1, 2022, if finalized and *if within timeframes*.  (*Id.*) (emphasis in the original).

The above discussion shows that Plaintiff did not properly follow the grievance process as to Grievance #18-4-22.  However, based on the record before it, the Court cannot find that the administrative remedies were available to Plaintiff prior to initiating this action.  Plaintiff did not receive the Counselor's response to his grievance for over eleven months despite his repeated follow-up requests.  Further, the Counselor's response does not justify that significant delay, given that the grievance was denied merely on the basis that the requested relief was outside the Department's authority.   There is no doubt that the mental health department and the Counselor did not need over eleven months to reach that conclusion.  *See Vargas*, No. 18-CV-06068, 2024 WL 1376369, at *6 ("by the time [the plaintiff] filed suit, roughly seven months had passed since he filed his grievances—"a more than reasonable time for jail officials to respond."); *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir.2005) ("administrative remedies [are] exhausted when prison officials fail to respond to inmate grievances because those remedies had become 'unavailable.'") (citation omitted).   Even more, Plaintiff made numerous attempts to prompt a response by submitting the follow-up grievances and reaching out directly to the ARB before filing suit.  Even when the counselor's response was finally sent to Plaintiff, it appears that Plaintiff continued to face hurdles in exhausting his administrative remedies in that the Counselor's response was not returned to him by the Law Library.

What is even more troublesome is that Plaintiff's mental health issues seem to have impaired his ability to follow the grievance process.  It is indicative that between March 2022 and May 2023, Plaintiff submitted more than 30 grievances, the majority of which had some procedural deficiency.  (*See* Docs.78-1 & 78-2); *Smallwood*, 59 F.4th at 316 (finding administrative

procedures unavailable to an inmate with intellectual limitations had no success in exhausting a grievance despite his 21 attempts between 2005 and 2002).  Some of the grievances and letters to the ARB also indicate Plaintiff's restricted ability to coherently articulate and communicate his condition and complaints.  (*See, e.g.*, Doc. 68-3 at 21, 28, 30, 36, 71-72).  Those difficulties were further apparent during the evidentiary hearing and in Plaintiff's filings with the Court.  (*See, e.g.*, Doc. 2, Doc. 54, Doc. 56, Doc. 63).   Taking into consideration Plaintiff's serious mental health issues that evidently affected his ability to follow the grievance process, the Court finds that the unjustified eleven months delay in the Counselor's response to Grievance #18-4-22, dated April 1, 2022, rendered the administrative remedies unavailable to Plaintiff.

The Court further rejects Defendants' argument that Grievance #18-4-22 did not exhaust Plaintiff's administrative remedies simply because it did not name Defendants.  As set forth above, the grievance contained sufficient information to serve its function by alerting the institution of Plaintiff's claim and providing the prison official with an opportunity to address his claims internally.

### 3.  Grievance #348-5-23, undated

In this grievance, Plaintiff grieved the imminent danger resulting from the shower heads and "flag showers" at galleries 1, 3, 5, and 7 at North 2 cell house.  ( Doc. 68-2 at 3-4).  The grievance is not fully legible due to low ink.  However, it is clear that Plaintiff is referencing the incident that occurred on April 4, 2022, and he further referenced Grievance #113-5-22.  The Counselor received the grievance on May 23, 2023, and responded on June 8, 2023, stating: "Per Orientation Manual 2021-2022, page 52, Section 504.810, filing of grievances, states "the grievance procedure shall not be utilized for complaints regarding decisions that have been rendered by the Director . . ." (Doc. 68-2 at 3-4).  There is no indication that Plaintiff ever submitted this grievance to the Grievance Officer for further review or that he appealed it to the ARB.  (Doc. 78-1 at 5-8).

While Plaintiff did not raise this issue, the Court finds that this grievance precludes summary judgment in Defendants' favor.  First, based on its legible parts, the grievance appears to directly cover Plaintiff's claims in this action.  Further, while not dated,[3] it was received by the Counselor within a week of the Plaintiff's attempted suicide on May 16, 2023, which is the subject matter of Count 2 of the complaint.   Based on the Counselor's response, the grievance was denied pursuant to Ill. Admin. Code § 504.810(b), which provides: "the grievance procedure shall not be utilized for complaints regarding decisions that have been rendered by the Director, such as but not limited to, facility placement, awards of supplemental sentence credit or transfer denials, or decisions that are outside the authority of the Department, such as parole decisions, clemency or orders regarding length of sentence."  20 ILL. ADMIN. CODE § 504.810(b).  The relief Plaintiff sought through Grievance #348-5-23 is not legible, and therefore, there remains a question of fact as to whether it falls within the scope of § 504.810(b).   In any case, however, the outcome would be the same.  If the relief sought falls within the scope of § 504.810(b), Plaintiff would be released from his obligation to exhaust the administrative remedies per the language of that section.  If, on the other hand,  the relief sought does not fall within the scope of § 504.810(b),  the administrative remedies would become unavailable due to the Counselor's misrepresentation in his response to the contrary. *See Ebmeyer v. Brock*, 11 F.4th 537, 542–43 (7th Cir. 2021) (noting that "remedies are considered unavailable when a correctional officer tells the prisoner that he cannot file a grievance when in fact the prisoner can do so").

Accordingly, the Court finds that Defendants have not satisfied their burden of proof on the issue of exhaustion of administrative remedies.  Therefore, their Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies must be denied.

---

[3] The Court notes that while the grievance was not dated, the institution chose to not deny it on that ground.

**Recruitment of Counsel**

During the evidentiary hearing on the motion for summary judgment, it became apparent to the Court that the complexity of this case has risen to a level that exceeds Plaintiff's ability to "coherently present it to the judge or jury himself."   While Plaintiff understood the nature and consequences of the proceeding, he had difficulty coherently representing his position and communicating with the Court.    In the past, Plaintiff, who is proceeding in forma pauperis, had filed three motions seeking recruitment of counsel.  (Docs. 4, 52, & 63).   Plaintiff had argued that he was "unable to pay postage" to litigate this case through mail and that he has a traumatic brain injury as well as serious mental health conditions that impede his ability to proceed in this case as a pro se litigant.   At that time, the Court had denied the motion because Plaintiff had failed to provide documentation of his alleged unsuccessful attempts to recruit counsel on his own.

Under Local Rule 83.9, the Court has the authority to assign counsel sua sponte or reconsider assigning counsel at any time.   SDIL-LR 83.9(a)(2).   In deciding whether the appointment of counsel is proper, the Court must make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself.   *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).   Courts may consider factors like the plaintiff's communication skills, education level, prior litigation experience, and performance to date in the ongoing litigation.   *Pruitt*, 503 F.3d at 655.

With respect to the second prong of the test, the Court finds that Plaintiff's communication skills and performance in the ongoing litigation, as reflected both at the evidentiary hearing and in Plaintiff's filings with the Court, demonstrate he is incompetent to litigate this case himself.   This conclusion is also supported by Plaintiff's low level of education.   (*See* Doc. 4 at 2 ("some high school education")).   Turning to the first prong of the test, while Plaintiff has not provided documentation of his attempts to retain counsel,  the Court finds that his mental health issues and

his financial restraints (inability to pay mail postage) effectively preclude Plaintiff from obtaining counsel on his own.  Therefore, recruitment of counsel is warranted at this stage of litigation.

**IT IS HEREBY ORDERED** that, for the reasons stated, and in accordance with 28 U.S.C. § 1915(e)(1) and Local Rules 83.1(j) and 83.9(b), Ashley Elizabeth Vaughan of the law firm Brown & Crouppen, P.C. is **ASSIGNED** to represent Plaintiff Robert Lee Plumlee, Jr. in this civil rights case.  On or before **October 10, 2024**, assigned counsel shall enter her appearance in this case.  Attorney Vaughan is free to share responsibilities with an attorney in her firm who is also admitted to practice in this district court.  Assigned counsel, however, must enter the case and shall make first contact with Plaintiff, explaining that an associate may also be working on the case.  Plaintiff should wait for her attorney to contact him to allow counsel an opportunity to review the court file.  The Clerk of Court is **DIRECTED** to transmit this Order to Attorney Vaughan.  The electronic case file is available through the CM-ECF system.

Now that counsel has been assigned, Plaintiff shall not personally file anything in this case, except a pleading that asks that he be allowed to have counsel withdraw from representation.  If counsel is allowed to withdraw at the request of Plaintiff, there is no guarantee the Court will appoint other counsel to represent Plaintiff.

Counsel is **ADVISED** to consult Local Rules 83.8-83.14 regarding *pro bono* case procedures.

Section 2.6 of this Court's Plan for the Administration of the District Court Fund provides for a degree of reimbursement of *pro bono* counsel's out-of-pocket expenses up to $5,000, as funds are available.  The Plan can be found on the Court's website, as well as the form motion for out-of-pocket expenses and an Authorization/Certification for Reimbursement.[4]  Any motion for reimbursement must be made within 30 days from the entry of judgment, or reimbursement will

---

[4] https://www.ilsd.uscourts.gov/Forms/AdminOfDistrictCourtFund.pdf.

be waived.  *See* SDIL-LR 83.13.  The funds available for this purpose are limited, however, and counsel should use the utmost care when incurring out-of-pocket costs.  In no event will funds be reimbursed if the expenditure is found to be without a proper basis.  No portion of a partial filing fee assessed pursuant to 28 U.S.C. § 1915 will be reimbursed.  Counsel may be reimbursed for PACER fees for this case.  The Court has no authority to pay attorney's fees in this case.  However, if after the assignment counsel discovers that Plaintiff can pay for legal services in whole or in part, counsel shall bring that information to the Court's attention.  *See* SDIL-LR 83.14(a).

The district court has entered into an agreement with attorney Alan Mills and the Uptown People's Law Center to consult with lawyers on issues in these cases, including substantive and procedural questions (both legal and practical) and dealing with the client.  Mr. Mills can be reached by email at alan@uplcchicago.org.  His services are available to counsel free of charge, as long as counsel is representing a prisoner *pro bono* on a case in the district. The Uptown People's Law Center website also contains information and resources.

As of this date, Plaintiff's contact information is:

MENARD CORRECTIONAL CENTER
711 Kaskaskia Street
PO Box 1000
Menard, IL 62259

In light of the appointment of counsel, the Court **DENIES** without prejudice Plaintiff's Motion to Amend Amended Complaint (Doc. 76), Motion Requesting Master (Doc. 80), Motion for Court Information (Doc. 81), and Motion for Status (Doc. 82).  The assigned counsel will evaluate Plaintiff's case and determine any further course of action, including the renewal of those motions.

## <u>Conclusion</u>

For the reasons stated above, Defendants' Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 47) is **DENIED**.  Plaintiff's Motion to Amend Amended Complaint (Doc. 76), Motion Requesting Master (Doc. 80), Motion for Court Information (Doc. 81), and Motion for Status (Doc. 82) are **DENIED** without prejudice.  The assigned counsel will evaluate Plaintiff's case and determine any further course of action, including the renewal of those motions.  Attorney Ashley Elizabeth Vaughan of the law firm Brown & Crouppen, P.C. is **ASSIGNED** to represent Plaintiff Robert Lee Plumlee, Jr. in this civil rights case.  On or before **October 10, 2024**, assigned counsel shall enter her appearance in this case.  The Clerk of Court is **DIRECTED** to transmit this Order to Attorney Vaughan.

**IT IS SO ORDERED.**

**DATED: September 24, 2024**

_s/_ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**