IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


ROBERT LEE PLUMLEE, II )
*B89377*, )
        Plaintiff, )
  )   Case No. 23-cv-1880-RJD
vs. )
  )
LATOYA HUGHES, *et al.*, )
  )
        Defendants. )


**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**[1]

This matter is before the Court on the Motion for Sanctions (Doc. 120) filed by Latoya

Hughes, in her individual capacity only, Anthony Wills, in his individual capacity only, and

Matthew Plummer, in his official capacity only.[2] It also comes before the Court for case

management purposes. For the reasons explained below, the motion is **DENIED without**

**prejudice**.


**Background**

On June 1, 2023, Plaintiff Robert Lee Plumlee, II, filed this civil rights action under 42

U.S.C. § 1983 for alleged violations of his constitutional rights at Menard Correctional Center

("Menard").[3] (Docs. 1 & 22). After threshold review of Plaintiff's First Amended Complaint,

Plumlee was allowed to proceed on the following claims:

---

[1] This case has been assigned to the undersigned for final disposition upon the parties' full consent pursuant to 28 U.S.C. § 636(c). (Doc. 35).

[2] The Clerk of Court is DIRECTED to substitute Matthew Plummer, the current Warden of Menard, in his official capacity only, for Anthony Wills, the former Warden of Menard, in his official capacity, pursuant to Fed. R. Civ. P. 25(d). Anthony Wills remains in this case in his individual capacity.

[3] Plumlee was in the custody of the Illinois Department of Corrections ("IDOC") when he initiated this action, but he has been released as of April 2025. (Doc. 104).

**Count 1:** Eighth Amendment deliberate indifference claim against Defendants for failing to protect Plaintiff from the risk of serious injury posed by flag showers in Menard's North II Cell House, which resulted in Plaintiff's self-inflicted harm with a homemade shank on or around April 4, 2022, and his return to the same area of the prison on crisis watch after April 5, 2022.

**Count 2:** Eighth Amendment deliberate indifference claim against Defendants for failing to protect Plaintiff from the risk of serious injury posed by flag showers in Menard's North II Cell House when he was again transferred there for crisis watch over his protests about his past injuries from homemade shanks on or around May 16, 2023.

(Doc. 22, pp. 1-3). Because Plumlee requested interim injunctive relief, the Warden of Menard was added in his official capacity. (*Id.*).

Contemporaneously with the Complaint, Plumlee filed his first motion for recruitment of counsel. (Doc. 4). He indicated that he had been labeled by the institution as seriously mentally ill and that he was "unqualified to proceed as a pro-se litigant." (Doc. 4, p. 1). However, Plaintiff did not provide any relevant documentation. Chief Judge Staci M. Yandle, the presiding judge at that time, denied Plumlee's request as premature and due to his failure to demonstrate reasonable efforts to obtain counsel on his own. (Doc. 9).

On February 15, 2024, Plumlee filed his second motion for recruitment of counsel. (Doc. 52). Plumlee indicated that he was "under protection of the court in any and all matters due to a traumatic brain injury." (*Id.* at 1). Plaintiff did not provide any documentation but indicated that "he is legally mentally insane" and that his disability history is on file at the courthouse in Benton, Illinois. (*Id.*). On May 6, 2024, Plaintiff also moved to "summon" Attorney Jason Drew, who Plumlee claimed to be a "paid legal adviser and is on file as the Plaintiff's lawyer." (Doc. 63). The Court understood Plumlee's motion as one for recruitment of counsel. The Court denied both motions because Plaintiff had again failed to demonstrate reasonable attempts to obtain counsel on his own. (Doc. 65, pp. 2-4).

On September 24, 2024, however, the Court sua sponte revisited the issue of recruitment of counsel. The Court did so after an evidentiary hearing on Defendants' motion for summary judgment, during which it became apparent that the complexity of this case had risen to a level that exceeded Plumlee's ability to prosecute it pro se. (Doc. 83, p. 20). The Court noted that while Plumlee understood the nature and consequences of the proceeding, he had difficulty coherently representing his position and communicating with the Court. (*Id.*). Accordingly, the Court appointed Attorney Patrick J. Ruberry to represent Plumlee in this action.[4] (Doc. 86). Attorney Ruberry entered his appearance on Plumlee's behalf on October 15, 2024. (Doc. 89).

Thereafter, the Court entered a Scheduling and Discovery Order setting the discovery and dispositive motions deadlines on November 5, 2025, and December 5, 2025, respectively. (Doc. 110). On October 30, 2025, Defendants moved to compel Plaintiff's attendance at his deposition or, in the alternative, for sanctions due to Plumlee's failure to attend his properly noticed deposition. (Doc. 113). The Court set the matter for a hearing on November 25, 2025, at which Plumlee appeared only through his counsel. Attorney Ruberry confirmed Plaintiff's failure to attend his deposition, but advised the Court that, on October 23, 2025, the Memphis Police Department listed Plumlee as a missing person and that his attempts to talk to Plaintiff via telephone had been unsuccessful due to the call being redirected to voicemail. (Doc. 119, p. 1). The Court granted Defendants' motion and ordered Plumlee to attend his deposition that was reset for January 6, 2026, or face dismissal of this action with prejudice. (*Id.* at 2).

On February 3, 2026, Defendants filed this pending Motion for Sanctions (Doc. 120). Defendants advised the Court that Plumlee failed to comply with the Court's order in that he

---

[4] Attorney Rubery was appointed to represent Plaintiff after the first court-appointed counsel, Ashley Elizabeth Vaughan, moved to withdraw from representation contemporaneously with the entry of her appearance due to medical reasons. (Docs. 83 & 86).

showed up for his deposition, which was scheduled via Zoom at 9:00 a.m., with approximately a 45-minute delay, after several attempted phone calls and emails by his counsel. (Doc. 120, p. 1). When Plumlee appeared, he was using his cell phone. (*Id.*). A poor connection was causing him to drop off the call or freeze, and his video feed would turn off or be otherwise unintelligible. (*Id.*). Plaintiff began the deposition by appearing from a public restroom, which he was forced to vacate. (*Id.*). He then walked to the Econo Lodge and was forced to vacate that location. (*Id.* at 2). During his deposition, Plaintiff was cursing or was otherwise derogatory despite warnings from both counsel regarding his obligation to coordinate and respond to the deposition. (*Id.*). Defense counsel characterized the testimony as "confusing and non-sensical." (*Id.*). For example, Plumlee testified that the underlying case was brought for his mother. (*Id.*). He also claimed that he and defense counsel had known each other for 20 years, but could not state what it involved, and said defense counsel did not represent him. (*Id.*). The deposition ended at 11:31 a.m. due to Plumlee's failure to reappear after he disconnected at 10:54 a.m. (*Id.*). The actual time of questioning lasted from 9:44 to 10:54, just 70 minutes. (*Id.*). Defendants argue that they expended time and resources twice to schedule and take Plumlee's deposition and that the only appropriate sanction for his failure to cooperate in discovery is dismissal with prejudice.

Plumlee's counsel filed a response. (Doc. 123). He did not dispute Defendants' factual allegations. He, however, raised concerns about Plumlee's legal competence. He pointed to portions of Plumlee's deposition wherein he referred to defense counsel as "Satan," saying that he had "expressed [his] emotion at that very time" and added that he feels like "everybody's the devil." (Doc. 123). He further argued that Plaintiff's failure to cooperate in discovery and comply with the Court's Order is not attributable to willfulness, bad faith, or actual fault, but rather to his mental health condition and the economic hardship that he is currently facing, including, but not

limited to, homelessness. In their reply, Defendants rejected the argument that Plumlee's financial restraints excuse his failure to cooperate in discovery and comply with the Court's order. (Doc. 124). As to Plumlee's mental competency, Defendants suggested that Plumlee is "strong-willed" and wanted "to direct the deposition in his way." (*Id.*).

### Discussion

Federal Rule of Civil Procedure 41(b) provides for the involuntary dismissal of an action for failure to prosecute or to comply with court orders. Fed. R. Civ. P. 41(b). Pursuant to Rule 41(b), an action may be dismissed "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (quoting *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998) (other citations omitted)). Dismissal is the most severe sanction that a court may apply; as such, its use must be tempered by a careful exercise of judicial discretion. *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983). Further, pursuant to Federal Rule of Procedure 37(d)(1)(a), this Court may order sanctions, including dismissal of the action, if a party fails to appear for a deposition after being served with proper notice. Fed. R. Civ. P. 37(d)(1)(A)(i); Fed. R. Civ. P. 37(d)(3); Fed. R. Civ. P. 37(b)(2)(A)(v).

However, the Seventh Circuit Court of Appeals has cautioned that the legal competence of the parties is a "threshold issue" that must be resolved before adjudicating other aspects of the lawsuit. *See Yoder v. Patla*, 234 F.3d 1275 (7th Cir. 2000) (unpublished) (addressing competency before venue issue) (citing *T.W. and M.S. by Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997)). Under Federal Rule of Civil Procedure 17(c), "the court must appoint a guardian ad litem—or issue another appropriate order—to protect a[n] ... incompetent person who is unrepresented in an

action." Fed. R. Civ. P. 17(c).[5] Typically, a district court does not need to assess a party's mental competence even if that party exhibits bizarre behavior that suggests mental illness. *See Jiles v. Frank*, No. 14-CV-545, 2014 WL 3860986, at \*2 (E.D. Wis. Aug. 5, 2014) (citing *Powell v. Symons,* 680 F.3d 301, 307 (3d Cir. 2012)). Yet, the court has a mandatory duty to do so when there is a motion for the appointment of a guardian ad litem or, *sua sponte*, when there is "verifiable evidence of incompetency." *Id.*; *see also Duan v. MX Pan Inc.*, No. 1:22-CV-02333-RLY-KMB, 2025 WL 2958420, at \*1 (S.D. Ind. Sept. 2, 2025).

Other circuits have found that verifiable evidence of incompetency includes the following: (1) "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent," or (2) "evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Mondelli*, 1 F.4th at 149 (quoting *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)). Accordingly, "anecdotal information or layperson opinions do not constitute verifiable evidence." *Id.*

The Seventh Circuit does not seem to have addressed what amounts to verifiable evidence of incompetence that triggers a district court's obligation to assess a party's legal competency *sua sponte*. However, in *Yoder*, it held that a motion for appointment of a guardian ad litem, indicating that the plaintiff had been adjudicated legally disabled in state court, raised a substantial question

---

[5] The Third Circuit Court of Appeals has found that "whether an incompetent person is 'unrepresented in an action' refers to whether that person has a Rule 17-type representative"—not on the person's pro se status. *Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 150 (3d Cir. 2021); *but see Matter of Chicago, Rock Island & Pac. R. Co.*, 788 F.2d 1280, 1282 (7th Cir. 1986) (noting in more general terms that if the incompetent party is "represented, the appointment of a guardian is not required, provided the representation is adequate, . . . as it would normally be if the party was being represented by a parent as 'next friend' and there was no conflict of interest between the party and his representative.").

as to his competency that triggered the court's obligation to inquire into that matter. 234 F.3d 1275 (citing *Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989) (motion claiming that an Illinois county had declared the plaintiff legally disabled "should have apprised the district court of [his condition]" and triggered competency proceedings)). The court remanded the case back to the district court for a hearing to determine whether the plaintiff had been adjudicated incompetent by a state court, and if not, to assess whether he could qualify as incompetent under the substantive law of the party's domicile. *Id.* (*citing Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990) (when determining competency under Rule 17(c), district court must utilize domiciliary state's standards though it need not use state's procedures)).

If a district court finds that a party is mentally incompetent, it should either appoint a guardian ad litem or enter "another appropriate order." Fed. R. Civ. P. 17(c)(2). Some courts have held that appointment of counsel is an example of "another appropriate order" under Rule 17(c) that a district court may order if it finds an unrepresented party to be mentally incompetent. *See, e.g.*, *Krain*, 880 F.2d at 1121 ("Or the court may find that the incompetent person's interests would be adequately protected by the appointment of a lawyer."); *see also Yoder*, 234 F.3d 1275 (instructing the district court to determine "whether a guardian ad litem or other representative should be appointed."); *Struve v. Gardner*, No. 119CV04581RLYMJD, 2021 WL 2004125, at *2 (S.D. Ind. Jan. 21, 2021) (explaining that there would not be need to appoint a guardian ad litem for a defendant who was "amply represented by counsel").

Other courts, however, have cautioned against the appointment of counsel to represent mentally incompetent litigants. *See Mondelli* 1 F.4th at 149–51 (noting that it "may be possible for the court to appoint counsel as a representative for a minor [or incompetent person,]" but cautioning that it may not be prudent because a "person's legal interest in a case may be different

from what is in the person's overall best interest.")

Here, no party has moved for the appointment of a guardian ad litem. Further, the Court has not been presented with any verifiable evidence that would typically trigger its obligation to *sua sponte* consider the appointment of a guardian ad litem or enter another appropriate order under Rule 17(c). Specifically, the Court is not privy to evidence from an appropriate court of record or a relevant public agency indicating that Plumlee has been adjudicated incompetent. Further, no party has presented "evidence from a mental health professional demonstrating that [Plumlee] is being or has been treated for mental illness of the type that would render him or her legally incompetent." While Plumlee's court-appointed counsel raised the issue of Plumlee's competency to sit for a deposition—and his legal competence in general—as a defense to the motion for sanctions, he fell short of asking the Court to appoint Plumlee a guardian ad litem. Further, Plumlee did not attach any verifiable evidence of incompetence to any of his motions seeking the recruitment of counsel.

Yet, similar to the plaintiff in *Yoder*, Plumlee indicated in one of his motions for recruitment of counsel that he is "legally mentally insane" and pointed to the record of a state court in Benton. The Court's independent review of Franklin County Circuit Court's public records indicates that Plumlee was the subject of a guardianship proceeding in 2005 while he was still a minor.[6] Even though the guardianship of a minor typically terminates at the age of majority, similarly to *Yoder*, the record before the Court raises a substantial question as to Plumlee's competency. *See also Hudnall v. Sellner,* 800 F.2d 377, 385 (4th Cir. 1986) (explaining that "if there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought in play"). Accordingly, the Court will enter a separate order setting

---

[6] *See* JUDICI, Franklin County, IL, Franklin County, IL | Case Information (last visited August 4, 2026)

this matter for a hearing to determine Plumlee's legal competency.

Because the Court cannot adjudicate other aspects of the lawsuit before the "threshold issue" of Plumlee's competency is resolved, Defendants' Motion for Sanctions is **DENIED without prejudice**. The Court will assess the appropriate sanctions for Plumlee's failure to attend his deposition twice and for his failure to comply with this Court's orders after the issue of his mental competence has been resolved.

### Conclusion

For these reasons, Defendants' Motion for Sanctions (Doc. 120) is **DENIED without prejudice**. The Court will enter a separate order setting this matter for a hearing on Plaintiff's legal competence.

**IT IS SO ORDERED.**

**DATED: August 4, 2026**

_____
**Hon. Reona J. Daly**
**United States Magistrate Judge**